| | | |
|---|---|---|
| SONIA E. BASS, and<br>SEB AUTO GROUP, LLC, | § <br> § <br> § <br> § <br> § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-00820-ALM |
| | § | |
| MAACO FRANCHISOR SPV, LLC,<br>DRIVEN BRANDS, INC., DARYL<br>HURST, and HELMUTH MAYER, | § <br> § <br> § <br> § | |
| Defendants. | § <br> § | |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Sonia E. Bass and SEB Auto Group, LLC file this amended complaint against Defendants MAACO Franchisor SPV, LLC, Driven Brands, Inc., Daryl Hurst, and Helmuth Mayer, and would respectfully show the Court as follows:

## I.

## PARTIES

1.     Plaintiff Sonia E. Bass is an individual residing in Texas. The last three digits of her driver's license number are 446, and the last three digits of her social security number are 611.

2.     Plaintiff SEB Auto Group, LLC is a domestic limited liability company doing business in Texas.

3.     Defendant MAACO Franchisor SPV, LLC is a foreign limited liability company doing business in Texas.

4.     Defendant Driven Brands, Inc. is a foreign corporation doing business in Texas.

5.     Defendant Daryl Hurst is an individual residing in North Carolina.

6.     Defendant Helmuth Mayer is an individual residing in Collin County, Texas.

## II.

## <u>JURISDICTION AND VENUE</u>

7.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because complete diversity exists among the parties, and the value of the relief sought exceeds $75,000 in controversy.

8.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because one of the Defendants resides in this District.

9.     The Court possesses personal jurisdiction over Defendants MAACO Franchisor SPV, LLC and Driven Brands, Inc. under the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042, *et. seq.*, because they have engaged in acts that constitute doing business in Texas, including but not limited to, contracting by mail or otherwise with Plaintiffs – Texas residents – which contract is to be performed in whole or in part in Texas, and Plaintiffs' claims and causes of action arise out of Defendants' purposeful actions directed towards Plaintiffs in the State of Texas.

10.     The Court possesses personal jurisdiction over Defendant Daryl Hurst under the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042, *et. seq.*, because he has committed a tort in whole or in part in the State of Texas against Plaintiff Bass, and her claims and causes of action arise out of Defendant Hurst's purposeful actions directed towards Plaintiff Bass in the State of Texas.

11.     The Court possesses personal jurisdiction over Defendant Helmuth Mayer because he is a resident of the State of Texas.

12.     Plaintiff SEB Auto Group, LLC ("SEB") owns a MAACO franchise operating Center No. M2059 located at 2434 North Story Road, Irving, Texas 75062 (the "MAACO Franchise"). Plaintiff Sonia Bass ("Bass") is the sole member of SEB and runs the day-to-day operations of the MAACO Franchise (Bass and SEB collectively referred to as "Plaintiffs").

13.     Defendant MAACO Franchisor SPV, LLC ("MAACO") is the signatory to a Franchise Agreement (the "Agreement") between MAACO and Bass for the MAACO Franchise, which Agreement was assigned, transferred, or accepted by SEB as the owner and/or operator of the MAACO Franchise. Defendant Driven Brands, Inc. ("Driven") is the parent company of MAACO and creates the procedures and policies under which MAACO franchisees must abide (MAACO and Driven collectively referred to as "MAACO Defendants").

14.     Defendant Daryl Hurst ("Hurst"), at the time the cause of action against him accrued, was an officer or agent of MAACO Defendants.

15.     Prior to Plaintiffs entering into the Agreement, MAACO Defendants failed to disclose material information which, had such been disclosed, would have prevented Plaintiffs from entering into the Agreement.  MAACO Defendants also made material misrepresentations upon which Plaintiffs relied when they entered into the Agreement.

16.     By way of example, MAACO Defendants represented that Plaintiffs would be provided and have access to MAACO's lucrative national fleet accounts. However, after entering into the Agreement, MAACO Defendants routinely made access to those accounts virtually unattainable by Plaintiffs, refusing to provide even a list of such accounts and falsely claiming that there is no such list, which is untrue.

17. Additionally, for the fleet accounts that Plaintiffs were able to land, Plaintiffs subsequently learned that MAACO required Plaintiffs to pay up to a 15% fee on all fleet accounts as a service charge on top of the franchise fee Plaintiffs were already paying to MAACO. Upon information and belief, the fleet accounts themselves received a 4% discount, and the remaining 11% fee went to MAACO as a kickback. And, in addition to this undisclosed fee, Plaintiffs were later required, after signing the Agreement, to pay additional monies for equipment to become "Platinum Certified" in exchange for fleet accounts.

18. At the same time, other individuals operating MAACO franchises in the area were being provided with preferential treatment on fleet accounts and additional franchise agreements with MAACO. Specifically, MAACO Defendants failed to disclose that licenses to open additional MAACO centers in the Dallas-Fort Worth geographical area were contractually and exclusively provided to another MAACO franchisee in the area, Defendant Helmuth Mayer ("Mayer"), and failed to disclose to Plaintiffs that MAACO had contracted with Mayer to award him a right of first refusal in the event Plaintiffs (or any other DFW franchisee) desired to sell their MAACO Franchise.

19. MAACO Defendants also awarded the "Most Favored Franchisee" status to Mayer by providing the licenses to open additional locations, granting rights of first refusal, and by designating Mayer as a "MAACO Fleet Solution" center, whereby they awarded the aforementioned lucrative fleet accounts to Mayer. By way of example, although Plaintiffs' MAACO Franchise is in the closest proximity to Dallas-Fort Worth International Airport (6.1 miles), MAACO gave the fleet account for Fox Auto Rental to Mayer, whose nearest location to DFW Airport is 13.1 miles.

20. This preferential treatment of Mayer by MAACO Defendants has been corroborated by other MAACO franchisees and was even admitted to Bass by Hurst after the Agreement was signed. MAACO was aware that it had provided these exclusive licenses and fleet accounts to Mayer

and that it failed to disclose same to Plaintiffs prior to the signing of the Agreement. Plaintiffs would never have entered into the Agreement if they knew that they could not expand their franchise footprint in the future because of the fact that MAACO would only permit such licenses in surrounding areas to Mayer. Now, Plaintiffs are prevented from selling or expanding their franchise due to the exclusive licensing right given by MAACO to Mayer, effectively locking Plaintiffs in to the one MAACO Franchise indefinitely.

21.    Furthermore, MAACO Defendants declare that they must approve all fleet account assignments, which results in determining which stores get business, and MAACO can stop the flow of fleet business to franchisees, which they have done by withholding fleet account assignments from Plaintiffs and providing them instead to Mayer and others.

22.    MAACO Defendants have also failed to provide sufficient support to Plaintiffs, as well as other franchisees, by failing to provide a coach for six months and then providing an inexperienced coach from outside of the industry who is overwhelmed by overseeing 70 stores. Additionally, Plaintiffs' former coach was hired by a competitor taking with him MAACO's corporate intelligence which has caused damages to Plaintiffs. This event, as well as MAACO Defendants' failure to take legal action against the coach for sharing trade secrets, has and continues to damage Plaintiffs. Conversely, Mayer has been allowed to hire other prior key corporate staff since then, creating a conflict of interest.

23.    MAACO Defendants have inconsistently withdrawn franchise fees allowing them to accumulate into the thousands and then deduct the fees several months late, which causes a severe disruption to the cash flow of Plaintiffs' MAACO Franchise. Not only are the withdrawals inconsistent, when the franchise fees are charged, they are hidden behind falsified invoices, which causes confusion and an inability to account for withdrawals.

24.     MAACO Defendants have implemented new strategies which are negatively impacting SEB's business to include manipulation of franchise discount policies (franchise discounts being an incentive for the initial franchise ownership) and have implemented unrealistic thresholds in order for franchisees to qualify for franchise discounts. This performance-based tactic treats franchisees as employees of MAACO instead of independent contractors, which is the relationship contractually agreed upon in the Agreement.

25.     MAACO Defendants have additionally overcharged Plaintiffs marketing fees for advertising. While the Agreement designated a marking fee of $990 per week, Plaintiffs have instead been charged $1,270 per week for marketing fees since the opening of the MAACO Franchise.

26.     To make matters worse, Plaintiffs receive little to nothing in exchange for those advertising and marketing fees. MAACO Defendants have sole and complete control over the advertising that Plaintiffs are allowed to do for the MAACO Franchise, including the running of the MAACO Franchise website. But MAACO Defendants actively post and/or allow false information to be disseminated online about the MAACO Franchise, such as falsely representing online that the location is closed on Mondays, which it is not, and advertising online that the location will perform paint jobs for $499, which is false. These actions have caused anger and confusion among customers and potential customers and caused Plaintiffs to lose business.

27.     MAACO Defendants have recently switched systems to a collision software requiring franchisees a transition period of migration from the existing software – Solara – to CCC (a collision standard software), which requires Plaintiffs to use collision center-oriented software that more than doubles the charges to Plaintiffs from the contracted rate of approximately $400 to $1,000 per month. This was done without Plaintiffs' knowledge and was not disclosed to them, nor to other franchisees; in fact, franchisees were required to sign up with CCC and are required to pay for both

software companies' fees at the same time (monthly) during the transition. These fees have been continually deducted against contractually agreed upon terms.

28. MAACO Defendants make a point to not refer to the MAACO franchises as "Collision Centers," because Driven also sells Car Star and Fix Auto franchises, which have much lower franchise fees than MAACO service centers, paying 2-3%, amongst other discounts, while Plaintiffs pay an 8% royalty and additional fees. So Plaintiffs' MAACO Franchise performs the same work as a Collision Center but pays much higher royalties. This is a blatant and inequitable practice by Driven of using one brand to disguise losses from their other brands and also protect cannibalization amongst their roster of franchises. This results in sacrificing their other perceived "lesser" brand and destroying the livelihoods of the franchisees.

29. MAACO Defendants represented to Plaintiffs that one of the perks of being a franchisee was having exclusive access to purchasing discounts through the Driver Advantage program for items such as paint. However, MAACO Defendants failed to disclose that these "perks" were not perks solely for franchisees; rather, MAACO Defendants were similarly offering competitors the same or better discounts through the program. This benefited MAACO Defendants and their bottom line but harmed Plaintiffs and other franchisees because these competitors were provided with a competitive advantage against franchisees without the franchisees' knowledge, effectively working against their own brand and franchisees as they were another revenue stream "line item" on the balance sheet.

30. In the first quarter of 2023, Plaintiffs' MAACO Franchise began being used as a pilot for implementing a new materials order system. The new system incorrectly charges sales tax and this defect was immediately communicated to MAACO Defendants, and they assured Plaintiffs that the sales taxes would be reimbursed. However, Plaintiffs never received any reimbursement for the

incorrect sales tax charges and the system has not been corrected which continues to cause incorrect sales tax to be charged.

31. As a result of the foregoing, Bass began vocalizing concerns within the MAACO's owner forum including concerns about marketing and media spend, licensing agreements and rights of first refusal for buy/sell of franchises, online software implementation, franchise discounts, and Bass's personal concerns about being humiliated and hostile treatment by MAACO.

32. After raising such concerns and discussing the hostile treatment, MAACO Defendants retaliated by making unreasonable requests to Plaintiffs, including but not limited to being directed by MAACO to collect on all invoices that are 120+ days within a two-week time span, including discrepant invoices that MAACO left unresolved. On September 25, 2022, Bass received notice that her MAACO Franchise was being audited by Driven. Regardless of the fact that Plaintiffs had only been a franchisee for three years, the notification email stated the audit will be for the last five years 2018-2022 which is an audit of approximately 2 ½ years of her being in business.

33. Although audits are permitted by the Agreement, the timing of such coincides with Bass vocalizing her above-mentioned concerns and appears to be another form of retaliation, particularly given the early success Plaintiffs initially had with the MAACO Franchise, at that time, achieving growth of 35% YOY. This audit notice was sent to Bass's store email address shared by all employees instead of either her personal email or her dedicated MAACO address for privacy, as all prior correspondence has been done in the past.

34. Then, on or about September 27, 2022, MAACO held the Fender Bender Management Conference at AT&T Stadium in Arlington, Texas. Notwithstanding that Bass and her General Manager were ostracized by corporate staff; it was at this event Hurst, personally threatened and yelled at Bass without any provocation.

35. Hurst's actions caused Bass to fear for her physical safety as he aggressively squared up with her causing her to be in apprehension of imminent bodily contact, with Hurst being much taller than Bass, and he humiliated her in front of multiple colleagues, employees, and other corporate staff.

36. Hurst personally bullied and verbally berated Bass about concerns that have been raised by multiple owners regarding MAACO's favoritism and steering of business to one particular franchisee. No other franchisee that raised these concerns was attacked and physically intimidated in such a manner in this very public forum.

37. Although Bass had been excited to be at the MAACO Franchise the next day to work with the corporate trainer she had been requesting for several years, she was so distraught and degraded by the encounter, fearing Hurst may make an appearance, that she had had to forgo what should've been a productive visit for herself, her staff, and her business.

**IV.**

**<u>COUNT 1: BREACH OF CONTRACT</u>**
**(Against MAACO)**

38. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

39. Plaintiffs fully performed under the Agreement or were excused from performing under the Agreement. As described in the foregoing paragraphs, MAACO has materially breached the Agreement in a number of respects by engaging in the acts described above. MAACO has also breached the covenant of good faith and fair dealing, which is implicit in every contract.

40.     As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

**V.**

**COUNT II: VIOLATION OF TEXAS BUSINESS OPPORTUNITY ACT/**
**TEXAS DECEPTIVE TRADE PRACTICES ACT**
**(Against MAACO Defendants)**

41.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

42.     Plaintiffs are consumers as that term is defined by the Texas Deceptive Trade Practices – Consumer Protection Act (DTPA). TEX. BUS. & COM. CODE § 17.45(4). MAACO Defendants' actions described above constitute multiple violations of the DTPA.

43.     Plaintiffs entered into the Agreement described above for the purpose of operating the MAACO Franchise in Irving, Texas.

44.     MAACO Defendants represented that in exchange for the initial consideration paid by Plaintiffs described in the Agreement, MAACO would perform under the Agreement.

45.     MAACO Defendants made representations to Plaintiffs which were untrue statements of material fact as described above.

46.     Plaintiffs further allege that the foregoing representations were made with knowledge of their falsity and with the intent of inducing Plaintiffs to rely upon them. Plaintiffs will show that the representations constitute violations of Section 51.301 of the Business Opportunity Act that have damaged Plaintiffs in an amount within the jurisdictional limits of the Court as more fully set forth below.

47. Plaintiffs further alleges that MAACO Defendants knowingly engaged in a device, scheme, or artifice to deceive persons such as the Plaintiffs by engaging in the conduct described above. Plaintiffs alleges that MAACO Defendants knew they engaged in such conduct for the purpose of separating the Plaintiffs from their investment. This violation of the Business Opportunity Act has damaged the Plaintiffs in an amount within the jurisdictional limits of the Court.

48. MAACO Defendants' conduct in violating the Business Opportunity Act as alleged above is a false, misleading, deceptive act or trade practice that is a violation of Section 17.46 of the DTPA, and Plaintiffs relied on this wrongful act or practice to their detriment.

49. Additionally, MAACO Defendants violated the DTPA by using or employing false, misleading, and deceptive acts and practices, including without limitation: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have (TEX. BUS. & COM. CODE § 17.46(b)(5)); (2) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TEX. BUS. & COM. CODE § 17.46(b)(12)); and (3) failing to disclose information concerning goods and services which was known at the time of the transaction to intend to induce Plaintiffs to enter into a transaction which they would not have entered had the information been disclosed TEX. BUS. & COM. CODE § 17.46(b)(24)).

50. Further, MAACO Defendants violated the DTPA by engaging in unconscionable actions that cannot be characterized as advice, judgment, or opinion, which took advantage of Plaintiffs' lack of knowledge, ability, experience or capacity to a grossly unfair degree and to their detriment. TEX. BUS. & COM. CODE § 17.50(a)(3).

51.     As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

52.     Moreover, MAACO Defendants' conduct described in the foregoing paragraphs was committed knowingly in that it was actually aware of the falsity, deception, and unfairness of the conduct about which Plaintiffs complain, and/or intentionally in that it acted with specific intent that Plaintiffs act in detrimental reliance on its acts. Accordingly, Plaintiffs are entitled to treble damages as provided by the DTPA, for which they now sue.  TEX. BUS. & COM. CODE § 17.50(b)(1).

**VI.**

### COUNT III: FRAUDULENT INDUCEMENT/FRAUD BY NON-DISCLOSURE
**(Against MAACO Defendants)**

53.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

54.     As described in the foregoing paragraphs, MAACO Defendants made multiple false representations to Plaintiffs, which representations they knew were false and were made with the intent of inducing Plaintiffs to enter into the Agreement, upon which Plaintiffs justifiably relied when entering into the Agreement, which Agreement Plaintiffs would not have entered into but for those misrepresentations, causing Plaintiffs to suffer injury.

55.     In addition or in the alternative, as described in the foregoing paragraphs, MAACO Defendants concealed or failed to disclose certain material facts to Plaintiffs that they had a duty to disclose,  MAACO Defendants knew Plaintiffs were ignorant of the facts and did not have an equal opportunity to discover the facts, by failing to disclose the facts MAACO Defendants induced

Plaintiffs to take some action or refrain from acting, Plaintiffs justifiably relied on this nondisclosure, and Plaintiffs were injured as a result.

56.     As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

**VII.**

**COUNT IV: NEGLIGENT MISREPRESENTATION**
**(Against MAACO Defendants)**

57.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

58.     MAACO Defendants owed Plaintiffs a duty to use reasonable care in making material representations of fact and not omitting material facts regarding the Agreement. MAACO Defendants acted negligently by failing to use reasonable care in misrepresenting material facts to Plaintiffs and in omitting material facts. MAACO Defendants knew that Plaintiffs would rely on their representations of material fact. Plaintiffs acted reasonably in relying on MAACO Defendants' representations. MAACO Defendants breached their duty of reasonable care by negligently supplying false and misleading information to Plaintiffs by omitting material facts.

59.     As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

**VIII.**

**COUNT V: DECLARATORY JUDGMENT**
**(Against MAACO Defendants and Mayer)**

60.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

61.     Plaintiffs are persons interested under a written contract whose rights, status or other legal relations are affected by a contract or franchise and seek a determination of construction or validity arising under the contract or franchise and seek a declaration of their rights, status, or other legal relations thereunder. Thus, there is an actual and justiciable controversy between the parties over which this Court is vested with the power to determine and declare under the Texas Declaratory Judgments Act (TDJA), Chapter 37 of the Texas Civil Practice and Remedies Code.

62.     Specifically Plaintiffs seek a declaration that the Agreement does not permit MAACO Defendants to grant rights of first refusal for sale of Plaintiffs' franchise to Mayer or any other third-party that were not disclosed in the Franchise Disclosure Document or Agreement; that the Agreement does not give MAACO Defendants the right to deny Plaintiffs access to fleet accounts and to instead assign such fleet accounts to Mayer; and that the Agreement does not permit MAACO to charge a 15% service charge to Plaintiffs on fleet accounts, for which they now sue.

63.     Because Plaintiffs seek declaratory relief that affects the rights, responsibilities, and interests of not only Plaintiffs and MAACO, but also Mayer, he is a necessary and indispensable party to this declaratory judgment action under the TDJA.

## <u>COUNT VI: ASSAULT</u>
**(Against Hurst)**

64. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

65. Hurst's actions on or about September 27, 2022 at AT&T Stadium caused Bass to fear for her physical safety as he aggressively squared up with her causing her to be in apprehension of imminent bodily contact, as Hurst being much taller than Bass, and he humiliated her in front of multiple colleagues, employees, and other corporate staff.

66. Hurst personally bullied and verbally berated Bass about concerns that have been raised by multiple owners regarding MAACO's favoritism and steering of business to one particular franchisee. Under Texas law, Hurst's actions constitute assault.

67. At the time of Hurst was an employee and corporate officer of MAACO and/or Driven at the time he assaulted Bass and his conduct was malicious.

68. Hurst had a duty to not assault Bass and he breached that duty by assaulting her in the manner described.

69. Hurst's assault on Bass was in furtherance of the work of his employer in that it was designed to intimidate, bully, humiliate, and silence Bass from voicing objections to MAACO's favoring of one particular franchisee.

70. Hurst's acts which are referable to the company's business to which the vice principal is expressly, impliedly, or apparently authorized to transact.

71.     As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

## X.

## ATTORNEY'S FEES

72.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

73.     Plaintiffs seek recovery of all attorney's fees and costs from Defendants pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001 and 37.009, TEX. BUS. & COMM. CODE § 17.50(d), and under any other applicable provision at law or equity, for which they now sue.

## XI.

## DAMAGES

74.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

75.     Plaintiffs seek recovery of all actual damages caused by Defendants, including but not limited to, lost profits, loss of use, out of pocket expenses, consequential damages, mental anguish, and other unspecified costs, for which they now sue.

76.     In addition, the actions of one or more of the Defendants as alleged above were knowing, intentional and/or malicious in that they acted with specific intent and design to injure Plaintiffs. Accordingly, Plaintiffs ask that exemplary damages be awarded against these parties in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

**XII.**

**<u>CONDITIONS PRECEDENT</u>**

77.    All conditions precedent to Plaintiffs' recovery have been performed or have occurred.

**XIII.**

**<u>JURY DEMAND</u>**

78.    Plaintiffs hereby demand a trial by jury.

**XIV.**

**<u>PRAYER</u>**

For the reasons stated, Plaintiffs prays that Defendants be cited to appear and answer herein, and that on final hearing, Plaintiffs have judgment against Defendants for the following:

1. Actual damages in an amount in excess of the minimum jurisdictional limits of the Court;

2. Treble damages as provided by the DTPA;

3. Reasonable and necessary attorney's fees;

4. Exemplary damages;

4. Pre-judgment interest at the rate of 8.50% per annum, or at the highest rate allowed by law;

5. Post-judgment interest at the rate of 8.50% per annum, or at the highest rate allowed by law;

6. Costs of suit; and

7. Such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By: */s/ Eric C. Wood*
Eric C. Wood
State Bar No. 24037737
eric@brownfoxlaw.com
Morgan M. Buller
State Bar No. 24109670
morgan@brownfoxlaw.com

BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, Texas 75034
Phone: (214) 327-5000
Fax: (214) 327-5001

ATTORNEYS FOR PLAINTIFFS
SONIA E. BASS AND
SEB AUTO GROUP, LLC

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system on October 11, 2024.

*/s/ Eric C. Wood*
Eric. C. Wood

Case 3:25-cv-00535-FDW-DCK    Document 9    Filed 10/11/24    Page 19 of 19