# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| SONIA E. BASS and SEB AUTO GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MAACO FRANCHISOR SPV, LLC, DRIVEN BRANDS, INC., DARYL HURST, and HELMUTH MAYER, <br><br> Defendants. | Civil Action No. 4:24-cv-00820-ALM |

## DEFENDANTS' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

Defendants MAACO Franchisor SPV, LLC ("MAACO"), Driven Brands, Inc. ("Driven Brands," collectively with MAACO, the "MAACO Defendants"), and Daryl Hurst ("Hurst," collectively with the MAACO Defendants, "Defendants") respectfully submit this response to Plaintiffs Sonia E. Bass ("Ms. Bass") and SEB Auto Group, LLC's ("SEB") (collectively, "Plaintiffs") Amended Complaint.

## I.

## PARTIES

1. Plaintiff Sonia E. Bass is an individual residing in Texas. The last three digits of her driver's license number are 446, and the last three digits of her social security number are 611.

*Answer*: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

2.    Plaintiff SEB Auto Group, LLC is a domestic limited liability company doing business in Texas.

*Answer*:    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

3.    Defendant MAACO Franchisor SPV, LLC is a foreign limited liability company doing business in Texas.

*Answer*:    MAACO admits the allegations in this paragraph.

4.    Defendant Driven Brands, Inc. is a foreign corporation doing business in Texas.

*Answer*:    Driven Brands admits that it is a foreign corporation, incorporated in Delaware and headquartered in North Carolina. Driven Brands' subsidiaries, such as MAACO, conduct business in Texas, but Driven Brands does not itself conduct business in Texas.

5.    Defendant Daryl Hurst is an individual residing in North Carolina.

*Answer*:    Defendant Hurst denies the allegations contained in this paragraph. Defendant Hurst is an individual residing in Tennessee.

6.    Defendant Helmuth Mayer is an individual residing in Collin County, Texas.

*Answer*:    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

## II.

## <u>JURISDICTION AND VENUE</u>

7.    Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because complete diversity exists among the parties, and the value of the relief sought exceeds $75,000 in controversy.

1614564075.5

*Answer*: Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because one of the Defendants resides in this District.

*Answer*: Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions. To the extent any response is deemed to be required, Defendants neither admit nor deny the allegations contained in this paragraph because they lack knowledge and information sufficient to form a belief as to Mayer's place of residence.

9. The Court possesses personal jurisdiction over Defendants MAACO Franchisor SPV, LLC and Driven Brands, Inc. under the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042, *et. seq.*, because they have engaged in acts that constitute doing business in Texas, including but not limited to, contracting by mail or otherwise with Plaintiffs - Texas residents - which contract is to be performed in whole or in part in Texas, and Plaintiffs' claims and causes of action arise out of Defendants' purposeful actions directed towards Plaintiffs in the State of Texas.

*Answer*: Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions. To the extent any response is deemed to be required, Defendants deny the allegations in this paragraph.

10. The Court possesses personal jurisdiction over Defendant Daryl Hurst under the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042, *et. seq.*, because he has committed a tort in whole or in part in the State of Texas against Plaintiff Bass, and her claims

and causes of action arise out of Defendant Hurst's purposeful actions directed towards Plaintiff Bass in the State of Texas.

*Answer*: Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions. To the extent any response is deemed to be required, Defendants deny the allegations in this paragraph.

11. The Court possesses personal jurisdiction over Defendant Helmuth Mayer because he is a resident of the State of Texas.

*Answer*: Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions. To the extent any response is deemed to be required, Defendants neither admit nor deny the allegations contained in this paragraph because they lack knowledge and information sufficient to form a belief as to the place of Mayer's residence.

## III.

## <u>SUMMARY OF FACTS</u>

12. Plaintiff SEB Auto Group, LLC ("SEB") owns a MAACO franchise operating Center No. M2059 located at 2434 North Story Road, Irving, Texas 75062 (the "MAACO Franchise"). Plaintiff Sonia Bass ("Bass") is the sole member of SEB and runs the day-to-day operations of the MAACO Franchise (Bass and SEB collectively referred to as "Plaintiffs").

*Answer*: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph, except that the MAACO Defendants admit that SEB is a franchisee of MAACO and operates a MAACO center at 2434 North Story Road, Irving, Texas, 75062.

1614564075.5

13.     Defendant MAACO Franchisor SPV, LLC ("MAACO") is the signatory to a Franchise Agreement (the "Agreement") between MAACO and Bass for the MAACO Franchise, which Agreement was assigned, transferred, or accepted by SEB as the owner and/or operator of the MAACO Franchise. Defendant Driven Brands, Inc. ("Driven") is the parent company of MAACO and creates the procedures and policies under which MAACO franchisees must abide (MAACO and Driven collectively referred to as "MAACO Defendants").

*Answer*:     MAACO admits that it is a signatory to a franchise agreement between MAACO and SEB (the "Franchise Agreement"), and Driven Brands admits that it is an indirect parent company of MAACO. Defendants deny the remainder of the allegations contained in this paragraph.

14.     Defendant Daryl Hurst ("Hurst"), at the time the cause of action against him accrued, was an officer or agent of MAACO Defendants.

*Answer*:     Hurst admits that he was an officer of MAACO from April 2019 to October 2024. Hurst denies the remaining allegations in this paragraph.

15.     Prior to Plaintiffs entering into the Agreement, MAACO Defendants failed to disclose material information which, had such been disclosed, would have prevented Plaintiffs from entering into the Agreement. MAACO Defendants also made material misrepresentations upon which Plaintiffs relied when they entered into the Agreement.

*Answer*:     Defendants deny the allegations in this paragraph.

16.     By way of example, MAACO Defendants represented that Plaintiffs would be provided and have access to MAACO's lucrative national fleet accounts. However, after entering into the Agreement, MAACO Defendants routinely made access to those accounts virtually

1614564075.5

unattainable by Plaintiffs, refusing to provide even a list of such accounts and falsely claiming that there is no such list, which is untrue.

*Answer*:  Defendants deny the allegations in this paragraph.

17.  Additionally, for the fleet accounts that Plaintiffs were able to land, Plaintiffs subsequently learned that MAACO required Plaintiffs to pay up to a 15% fee on all fleet accounts as a service charge on top of the franchise fee Plaintiffs were already paying to MAACO. Upon information and belief, the fleet accounts themselves received a 4% discount, and the remaining 11% fee went to MAACO as a kickback. And, in addition to this undisclosed fee, Plaintiffs were later required, after signing the Agreement, to pay additional monies for equipment to become "Platinum Certified" in exchange for fleet accounts.

*Answer*:  Defendants deny the allegations in this paragraph.

18.  At the same time, other individuals operating MAACO franchises in the area were being provided with preferential treatment on fleet accounts and additional franchise agreements with MAACO. Specifically, MAACO Defendants failed to disclose that licenses to open additional MAACO centers in the Dallas-Fort Worth geographical area were contractually and exclusively provided to another MAACO franchisee in the area, Defendant Helmuth Mayer ("Mayer"), and failed to disclose to Plaintiffs that MAACO had contracted with Mayer to award him a right of first refusal in the event Plaintiffs (or any other DFW franchisee) desired to sell their MAACO Franchise.

*Answer*:  Defendants deny the allegations in this paragraph.

19.  MAACO Defendants also awarded the "Most Favored Franchisee" status to Mayer by providing the licenses to open additional locations, granting rights of first refusal, and by designating Mayer as a "MAACO Fleet Solution" center, whereby they awarded the

1614564075.5

aforementioned lucrative fleet accounts to Mayer. By way of example, although Plaintiffs' MAACO Franchise is in the closest proximity to Dallas-Fort Worth International Airport (6.1 miles), MAACO gave the fleet account for Fox Auto Rental to Mayer, whose nearest location to DFW Airport is 13.1 miles.

*Answer*: Defendants deny the allegations in this paragraph.

20. This preferential treatment of Mayer by MAACO Defendants has been corroborated by other MAACO franchisees and was even admitted to Bass by Hurst after the Agreement was signed. MAACO was aware that it had provided these exclusive licenses and fleet accounts to Mayer and that it failed to disclose same to Plaintiffs prior to the signing of the Agreement. Plaintiffs would never have entered into the Agreement if they knew that they could not expand their franchise footprint in the future because of the fact that MAACO would only permit such licenses in surrounding areas to Mayer. Now, Plaintiffs are prevented from selling or expanding their franchise due to the exclusive licensing right given by MAACO to Mayer, effectively locking Plaintiffs into the one MAACO Franchise indefinitely.

*Answer*: Defendants deny the allegations in this paragraph.

21. Furthermore, MAACO Defendants declare that they must approve all fleet account assignments, which results in determining which stores get business, and MAACO can stop the flow of fleet business to franchisees, which they have done by withholding fleet account assignments from Plaintiffs and providing them instead to Mayer and others.

*Answer*: Defendants deny the allegations in this paragraph.

22. MAACO Defendants have also failed to provide sufficient support to Plaintiffs, as well as other franchisees, by failing to provide a coach for six months and then providing an inexperienced coach from outside of the industry who is overwhelmed by overseeing 70 stores.

Additionally, Plaintiffs' former coach was hired by a competitor taking with him MAACO's corporate intelligence which has caused damages to Plaintiffs. This event, as well as MAACO Defendants' failure to take legal action against the coach for sharing trade secrets, has and continues to damage Plaintiffs. Conversely, Mayer has been allowed to hire other prior key corporate staff since then, creating a conflict of interest.

*Answer*: Defendants deny the allegations in this paragraph.

23. MAACO Defendants have inconsistently withdrawn franchise fees allowing them to accumulate into the thousands and then deduct the fees several months late, which causes a severe disruption to the cash flow of Plaintiffs' MAACO Franchise. Not only are the withdrawals inconsistent, when the franchise fees are charged, they are hidden behind falsified invoices, which causes confusion and an inability to account for withdrawals.

*Answer*: Defendants deny the allegations in this paragraph.

24. MAACO Defendants have implemented new strategies which are negatively impacting SEB's business to include manipulation of franchise discount policies (franchise discounts being an incentive for the initial franchise ownership) and have implemented unrealistic thresholds in order for franchisees to qualify for franchise discounts. This performance-based tactic treats franchisees as employees of MAACO instead of independent contractors, which is the relationship contractually agreed upon in the Agreement.

*Answer*: Defendants deny the allegations in this paragraph.

25. MAACO Defendants have additionally overcharged Plaintiffs marketing fees for advertising. While the Agreement designated a marking fee of $990 per week, Plaintiffs have instead been charged $1,270 per week for marketing fees since the opening of the MAACO Franchise.

1614564075.5

*Answer*: Defendants deny the allegations in this paragraph.

26. To make matters worse, Plaintiffs receive little to nothing in exchange for those advertising and marketing fees. MAACO Defendants have sole and complete control over the advertising that Plaintiffs are allowed to do for the MAACO Franchise, including the running of the MAACO Franchise website. But MAACO Defendants actively post and/or allow false information to be disseminated online about the MAACO Franchise, such as falsely representing online that the location is closed on Mondays, which it is not, and advertising online that the location will perform paint jobs for $499, which is false. These actions have caused anger and confusion among customers and potential customers and caused Plaintiffs to lose business.

*Answer*: Defendants deny the allegations in this paragraph.

27. MAACO Defendants have recently switched systems to a collision software requiring franchisees a transition period of migration from the existing software - Solara - to CCC (a collision standard software), which requires Plaintiffs to use collision center-oriented software that more than doubles the charges to Plaintiffs from the contracted rate of approximately $400 to $1,000 per month. This was done without Plaintiffs' knowledge and was not disclosed to them, nor to other franchisees; in fact, franchisees were required to sign up with CCC and are required to pay for both software companies' fees at the same time (monthly) during the transition. These fees have been continually deducted against contractually agreed upon terms.

*Answer*: Defendants deny the allegations in this paragraph, except that Defendants admit that Maaco implemented a change in the collision system software required to be used by its franchisees, from Solera to CCC.

1614564075.5

28. MAACO Defendants make a point to not refer to the MAACO franchises as "Collision Centers," because Driven also sells Car Star and Fix Auto franchises, which have much lower franchise fees than MAACO service centers, paying 2-3%, amongst other discounts, while Plaintiffs pay an 8% royalty and additional fees. So Plaintiffs' MAACO Franchise performs the same work as a Collision Center but pays much higher royalties. This is a blatant and inequitable practice by Driven of using one brand to disguise losses from their other brands and also protect cannibalization amongst their roster of franchises. This results in sacrificing their other perceived "lesser" brand and destroying the livelihoods of the franchisees.

*Answer*: Defendants deny the allegations in this paragraph.

29. MAACO Defendants represented to Plaintiffs that one of the perks of being a franchisee was having exclusive access to purchasing discounts through the Driver Advantage program for items such as paint. However, MAACO Defendants failed to disclose that these "perks" were not perks solely for franchisees; rather, MAACO Defendants were similarly offering competitors the same or better discounts through the program. This benefited MAACO Defendants and their bottom line but harmed Plaintiffs and other franchisees because these competitors were provided with a competitive advantage against franchisees without the franchisees' knowledge, effectively working against their own brand and franchisees as they were another revenue stream "line item" on the balance sheet.

*Answer*: Defendants deny the allegations in this paragraph.

30. In the first quarter of 2023, Plaintiffs' MAACO Franchise began being used as a pilot for implementing a new materials order system. The new system incorrectly charges sales tax and this defect was immediately communicated to MAACO Defendants, and they assured Plaintiffs that the sales taxes would be reimbursed. However, Plaintiffs never received any

reimbursement for the incorrect sales tax charges and the system has not been corrected which continues to cause incorrect sales tax to be charged.

*Answer*: Defendants deny the allegations in this paragraph.

31. As a result of the foregoing, Bass began vocalizing concerns within the MAACO's owner forum including concerns about marketing and media spend, licensing agreements and rights of first refusal for buy/sell of franchises, online software implementation, franchise discounts, and Bass's personal concerns about being humiliated and hostile treatment by MAACO.

*Answer*: Defendants deny the allegations in this paragraph.

32. After raising such concerns and discussing the hostile treatment, MAACO Defendants retaliated by making unreasonable requests to Plaintiffs, including but not limited to being directed by MAACO to collect on all invoices that are 120+ days within a two-week time span, including discrepant invoices that MAACO left unresolved. On September 25, 2022, Bass received notice that her MAACO Franchise was being audited by Driven. Regardless of the fact that Plaintiffs had only been a franchisee for three years, the notification email stated the audit will be for the last five years 2018-2022 which is an audit of approximately 2 ^ years of her being in business.

*Answer*: Defendants admit that Plaintiffs were sent a notice on or about September 25, 2022, that their MAACO Franchise was being audited, and Defendants refer to the contents of that notice for its terms. Defendants deny the remaining allegations in this paragraph.

33. Although audits are permitted by the Agreement, the timing of such coincides with Bass vocalizing her above-mentioned concerns and appears to be another form of

1614564075.5

retaliation, particularly given the early success Plaintiffs initially had with the MAACO Franchise, at that time, achieving growth of 35% YOY. This audit notice was sent to Bass's store email address shared by all employees instead of either her personal email or her dedicated MAACO address for privacy, as all prior correspondence has been done in the past.

*Answer*: Defendants admits that the audit notice was sent to Bass's store email address, but deny the remainder of the allegations in this paragraph.

34. Then, on or about September 27, 2022, MAACO held the Fender Bender Management Conference at AT&T Stadium in Arlington, Texas. Notwithstanding that Bass and her General Manager were ostracized by corporate staff; it was at this event Hurst, personally threatened and yelled at Bass without any provocation.

*Answer*: Defendants deny the allegations in this paragraph.

35. Hurst's actions caused Bass to fear for her physical safety as he aggressively squared up with her causing her to be in apprehension of imminent bodily contact, with Hurst being much taller than Bass, and he humiliated her in front of multiple colleagues, employees, and other corporate staff.

*Answer*: Defendants deny the allegations in this paragraph.

36. Hurst personally bullied and verbally berated Bass about concerns that have been raised by multiple owners regarding MAACO's favoritism and steering of business to one particular franchisee. No other franchisee that raised these concerns was attacked and physically intimidated in such a manner in this very public forum.

*Answer*: Defendants deny the allegations in this paragraph.

37. Although Bass had been excited to be at the MAACO Franchise the next day to work with the corporate trainer she had been requesting for several years, she was so distraught

and degraded by the encounter, fearing Hurst may make an appearance, that she had had to forgo what should've been a productive visit for herself, her staff, and her business.

*Answer*:     Defendants deny the allegations in this paragraph.

**IV.**

**COUNT 1: BREACH OF CONTRACT**

**(Against MAACO)**

38.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*:     MAACO incorporates the answers to paragraphs 1 through 37 for its answer to paragraph 38.

39.     Plaintiffs fully performed under the Agreement or were excused from performing under the Agreement. As described in the foregoing paragraphs, MAACO has materially breached the Agreement in a number of respects by engaging in the acts described above. MAACO has also breached the covenant of good faith and fair dealing, which is implicit in every contract.

*Answer*:     MAACO denies the allegations in this paragraph.

40.     As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

*Answer*:     MAACO denies the allegations in this paragraph.

1614564075.5

**V.**

**COUNT II: VIOLATION OF TEXAS BUSINESS OPPORTUNITY ACT/**

**TEXAS DECEPTIVE TRADE PRACTICES ACT**

**(Against MAACO Defendants)**

41. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*: The MAACO Defendants incorporate the answers to paragraphs 1 through 40 for their answer to paragraph 41.

42. Plaintiffs are consumers as that term is defined by the Texas Deceptive Trade Practices - Consumer Protection Act (DTPA). Tex. Bus. & Com. Code § 17.45(4). MAACO Defendants' actions described above constitute multiple violations of the DTPA.

*Answer*: The MAACO Defendants neither admit nor deny the allegation that Plaintiffs are consumers as that term is defined by the Texas Deceptive Trade Practices Act because it is a mere legal conclusion. Defendants deny the remaining allegations in this paragraph.

43. Plaintiffs entered into the Agreement described above for the purpose of operating the MAACO Franchise in Irving, Texas.

*Answer*: The MAACO Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

44. MAACO Defendants represented that in exchange for the initial consideration paid by Plaintiffs described in the Agreement, MAACO would perform under the Agreement.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

14

45. MAACO Defendants made representations to Plaintiffs which were untrue statements of material fact as described above.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

46. Plaintiffs further allege that the foregoing representations were made with knowledge of their falsity and with the intent of inducing Plaintiffs to rely upon them. Plaintiffs will show that the representations constitute violations of Section 51.301 of the Business Opportunity Act that have damaged Plaintiffs in an amount within the jurisdictional limits of the Court as more fully set forth below.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

47. Plaintiffs further allege that MAACO Defendants knowingly engaged in a device, scheme, or artifice to deceive persons such as the Plaintiffs by engaging in the conduct described above. Plaintiffs alleges that MAACO Defendants knew they engaged in such conduct for the purpose of separating the Plaintiffs from their investment. This violation of the Business Opportunity Act has damaged the Plaintiffs in an amount within the jurisdictional limits of the Court.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

48. MAACO Defendants' conduct in violating the Business Opportunity Act as alleged above is a false, misleading, deceptive act or trade practice that is a violation of Section 17.46 of the DTPA, and Plaintiffs relied on this wrongful act or practice to their detriment.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

49. Additionally, MAACO Defendants violated the DTPA by using or employing false, misleading, and deceptive acts and practices, including without limitation: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

15

quantities which they do not have (Tex. Bus. & Com. Code § 17.46(b)(5)); (2) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (Tex. Bus. & Com. Code § 17.46(b)(12)); and (3) failing to disclose information concerning goods and services which was known at the time of the transaction to intend to induce Plaintiffs to enter into a transaction which they would not have entered had the information been disclosed TEX. BUS. & COM. CODE § 17.46(b)(24)).

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

50. Further, MAACO Defendants violated the DTPA by engaging in unconscionable actions that cannot be characterized as advice, judgment, or opinion, which took advantage of Plaintiffs' lack of knowledge, ability, experience or capacity to a grossly unfair degree and to their detriment. TEX. BUS. & COM. CODE § 17.50(a)(3).

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

51. As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

52. Moreover, MAACO Defendants' conduct described in the foregoing paragraphs was committed knowingly in that it was actually aware of the falsity, deception, and unfairness of the conduct about which Plaintiffs complain, and/or intentionally in that it acted with specific intent that Plaintiffs act in detrimental reliance on its acts. Accordingly, Plaintiffs are entitled to treble damages as provided by the DTPA, for which they now sue. Tex. Bus. & Com. Code § 17.50(b)(1).

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

1614564075.5

## VI.

## <u>COUNT III: FRAUDULENT INDUCEMENT/FRAUD BY NON-DISCLOSURE</u>

## (Against MAACO Defendants)

53. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*: The MAACO Defendants incorporate the answers to paragraphs 1 through 52 for their answer to paragraph 53.

54. As described in the foregoing paragraphs, MAACO Defendants made multiple false representations to Plaintiffs, which representations they knew were false and were made with the intent of inducing Plaintiffs to enter into the Agreement, upon which Plaintiffs justifiably relied when entering into the Agreement, which Agreement Plaintiffs would not have entered into but for those misrepresentations, causing Plaintiffs to suffer injury.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

55. In addition or in the alternative, as described in the foregoing paragraphs, MAACO Defendants concealed or failed to disclose certain material facts to Plaintiffs that they had a duty to disclose, MAACO Defendants knew Plaintiffs were ignorant of the facts and did not have an equal opportunity to discover the facts, by failing to disclose the facts MAACO Defendants induced Plaintiffs to take some action or refrain from acting, Plaintiffs justifiably relied on this nondisclosure, and Plaintiffs were injured as a result.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

56. As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

1614564075.5

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

**VII.**

**COUNT IV: NEGLIGENT MISREPRESENTATION**

**(Against MAACO Defendants)**

57. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*: The MAACO Defendants incorporate the answers to paragraphs 1 through 56 for their answer to paragraph 57.

58. MAACO Defendants owed Plaintiffs a duty to use reasonable care in making material representations of fact and not omitting material facts regarding the Agreement. MAACO Defendants acted negligently by failing to use reasonable care in misrepresenting material facts to Plaintiffs and in omitting material facts. MAACO Defendants knew that Plaintiffs would rely on their representations of material fact. Plaintiffs acted reasonably in relying on MAACO Defendants' representations. MAACO Defendants breached their duty of reasonable care by negligently supplying false and misleading information to Plaintiffs by omitting material facts.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

59. As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

1614564075.5

**VIII.**

**COUNT V: DECLARATORY JUDGMENT**

**(Against MAACO Defendants and Mayer)**

60.     Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*:     The MAACO Defendants incorporate the answers to paragraphs 1 through 59 for their answer to paragraph 60.

61.     Plaintiffs are persons interested under a written contract whose rights, status or other legal relations are affected by a contract or franchise and seek a determination of construction or validity arising under the contract or franchise and seek a declaration of their rights, status, or other legal relations thereunder. Thus, there is an actual and justiciable controversy between the parties over which this Court is vested with the power to determine and declare under the Texas Declaratory Judgments Act (TDJA), Chapter 37 of the Texas Civil Practice and Remedies Code.

*Answer*:     The MAACO Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions.

62.     Specifically Plaintiffs seek a declaration that the Agreement does not permit MAACO Defendants to grant rights of first refusal for sale of Plaintiffs' franchise to Mayer or any other third- party that were not disclosed in the Franchise Disclosure Document or Agreement; that the Agreement does not give MAACO Defendants the right to deny Plaintiffs access to fleet accounts and to instead assign such fleet accounts to Mayer; and that the Agreement does not permit MAACO to charge a 15% service charge to Plaintiffs on fleet accounts, for which they now sue.

19

*Answer*: The MAACO Defendants deny the allegations in this paragraph and refer the Court to the Franchise Agreement for its contents.

63. Because Plaintiffs seek declaratory relief that affects the rights, responsibilities, and interests of not only Plaintiffs and MAACO, but also Mayer, he is a necessary and indispensable party to this declaratory judgment action under the TDJA.

*Answer*: The MAACO Defendants deny the allegations in this paragraph.

## IX.

## <u>COUNT VI: ASSAULT</u>

### (Against Hurst)

64. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*: Hurst incorporates the answers to paragraphs 1 through 63 for his answer to paragraph 64.

65. Hurst's actions on or about September 27, 2022 at AT&T Stadium caused Bass to fear for her physical safety as he aggressively squared up with her causing her to be in apprehension of imminent bodily contact, as Hurst being much taller than Bass, and he humiliated her in front of multiple colleagues, employees, and other corporate staff.

*Answer*: Hurst denies the allegations in this paragraph.

66. Hurst personally bullied and verbally berated Bass about concerns that have been raised by multiple owners regarding MAACO's favoritism and steering of business to one particular franchisee. Under Texas law, Hurst's actions constitute assault.

*Answer*: Hurst denies the allegations in this paragraph.

1614564075.5

67. At the time of [sic] Hurst was an employee and corporate officer of MAACO and/or Driven at the time he assaulted Bass and his conduct was malicious.

*Answer*: Hurst denies the allegations in this paragraph.

68. Hurst had a duty to not assault Bass and he breached that duty by assaulting her in the manner described.

*Answer*: Hurst denies the allegations in this paragraph.

69. Hurst's assault on Bass was in furtherance of the work of his employer in that it was designed to intimidate, bully, humiliate, and silence Bass from voicing objections to MAACO's favoring of one particular franchisee.

*Answer*: Hurst denies the allegations in this paragraph.

70. Hurst's acts which are referable to the company's business to which the vice principal is expressly, impliedly, or apparently authorized to transact.

*Answer*: Hurst denies the allegations in this paragraph.

71. As a proximate result of the foregoing acts and omissions by one or more Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

*Answer*: Hurst denies the allegations in this paragraph.

## X.

## ATTORNEY'S FEES

72. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*: Defendants incorporate the answers to paragraphs 1 through 71 for their answer to paragraph 72.

1614564075.5

73. Plaintiffs seek recovery of all attorney's fees and costs from Defendants pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001 and 37.009, TEX. BUS. & COMM. CODE § 17.50(d), and under any other applicable provision at law or equity, for which they now sue.

*Answer*: Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions.

## XI.

## **DAMAGES**

74. Plaintiffs re-allege and incorporate by reference each and every allegation made in the foregoing paragraphs as if each were separately set forth herein.

*Answer*: Defendants incorporate the answers to paragraphs 1 through 73 for their answer to paragraph 74.

75. Plaintiffs seek recovery of all actual damages caused by Defendants, including but not limited to, lost profits, loss of use, out of pocket expenses, consequential damages, mental anguish, and other unspecified costs, for which they now sue.

*Answer*: Defendants deny the allegation that Defendants caused Plaintiffs any damages.

76. In addition, the actions of one or more of the Defendants as alleged above were knowing, intentional and/or malicious in that they acted with specific intent and design to injure Plaintiffs. Accordingly, Plaintiffs ask that exemplary damages be awarded against these parties in an amount in excess of the minimum jurisdictional limits of the Court, for which they now sue.

*Answer*: Defendants deny the allegations in this paragraph.

1614564075.5

**XII.**

**CONDITIONS PRECEDENT**

77.     All conditions precedent to Plaintiffs' recovery have been performed or have occurred.

*Answer*:     Defendants neither admit nor deny the allegations contained in this paragraph as they are mere legal conclusions.

**XIII.**

**JURY DEMAND**

78.     Plaintiffs hereby demand a trial by jury.

*Answer*:     Plaintiffs' demand for jury trial requires no responsive pleading.

**XIV.**

**PRAYER**

For the reasons stated, Plaintiffs prays that Defendants be cited to appear and answer herein, and that on final hearing, Plaintiffs have judgment against Defendants for the following:

1.     Actual damages in an amount in excess of the minimum jurisdictional limits of the Court;

2.     Treble damages as provided by the DTPA;

3.     Reasonable and necessary attorney's fees;

4.     Exemplary damages;

5.     Pre-judgment interest at the rate of 8.50% per annum, or at the highest rate allowed by law;

6.     Post-judgment interest at the rate of 8.50% per annum, or at the highest rate allowed by law;

23

7. Costs of suit; and

8. Such other and further relief to which Plaintiffs may show themselves justly entitled.

*Answer*: Answering Plaintiffs' prayer for relief, Defendants deny that Plaintiffs are entitled to any relief against Defendants.

## <u>AFFIRMATIVE DEFENSES</u>

1. Plaintiffs have failed to state a claim upon which relief may be granted.

2. Plaintiffs' breach of contract claim is refuted by the terms and conditions of the Franchise Agreement.

3. Plaintiffs' claim under the Texas Deceptive Trade Practices Act is precluded by the choice of law provision in the Franchise Agreement, which provides that "any dispute between the parties shall be governed by and determined in accordance with the substantive law of the State of North Carolina, which laws shall prevail in the event of a conflict of law."

4. Plaintiffs' claim under the Texas Deceptive Trade Practices Act fails because the transaction is exempt from the Act under Tex. Bus. & Com. Code § 17.49(f) and (g).

5. Plaintiffs' claim under the Texas Business Opportunity Act fails because the transaction is not a business opportunity as defined in Tex. Bus. & Com. Code § 51.003. *See id.* § 51.003(b)(8).

6. Defendants did not owe any legal duty to Plaintiffs or breach any duty owed to Plaintiffs.

7. Defendants did not breach any standard of care owed to Plaintiffs, and Defendants are not responsible for Plaintiffs' alleged injury and damages.

8. Plaintiffs did not reasonably rely on any alleged misrepresentation made by Defendants.

9. Plaintiffs are under a duty to reasonably mitigate their damages, and to the extent they have failed to do so, Plaintiffs' recovery is barred.

10. Plaintiffs' claims may be barred by waiver, estoppel, statute of limitations and/or laches.

11. Defendants reserve the right to amend these affirmative defenses as allowed by law.

Dated: December 2, 2024                    Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Maria A. Garrett*
      **Maria A. Garrett**
      Texas Bar No. 24099673
      Maria.Garrett@us.dlapiper.com
      1900 N. Pearl Street, Suite 2200
      Dallas, Texas 75201
      Telephone: 214-743-4500
      Facsimile: 214-743-4545

      **John F. Verhey** (admitted *pro hac vice*)
      444 West Lake Street, Suite 900
      Chicago, Illinois 60606
      Telephone: 312-368-4044
      Facsimile: 312-236-7516
      john.verhey@us.dlapiper.com

      **Madeline A. Cordray** (admitted *pro hac vice)*
      2525 East Camelback Road, Suite 1000
      Phoenix, Arizona 85016
      Telephone: 480-606-5115
      Facsimile: 480-606-5101
      madeline.cordray@us.dlapiper.com

      *Attorneys for Defendants*
      *MAACO Franchisor SPV, LLC, Driven*
      *Brands, Inc., and Daryl Hurst*

1614564075.5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on December 2, 2024 via the Court's electronic notification system and/or electronic mail.

Eric C. Wood
eric@brownfoxlaw.conn
Morgan M. Buller
morgan@brownfoxlaw.com.
6303 Cowboys Way, Suite 450
Frisco, Texas 75034
Phone: (214) 327-5000
Fax: (214) 327-5001

*Attorneys for Plaintiffs*

*/s/ Maria A. Garrett*
Maria A. Garrett

1614564075.5