| | |
|---|---|
| SONIA E. BASS, and SEB AUTO GROUP, LLC, § § § *Plaintiffs,* § § v. § § MAACO FRANCHISOR SPV, LLC, § DRIVEN BRANDS, INC., DARYL § HURST, and HELMUTH MAYER, § § *Defendants.* § | Civil Action No. 4:24-cv-820 Judge Mazzant |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #11). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This case arises from an alleged breach of contract between Plaintiffs—an automative operating company and its sole member—and Defendants, automotive franchises specializing in auto painting and collision repair. In April 2020, Plaintiffs entered into a Franchise Agreement ("the Agreement") to operate an auto body repair center for Defendants in Irving, Texas (Dkt. #11 at p. 2). Plaintiffs' sole member also executed a personal guaranty, agreeing to be bound by the Agreement's terms (Dkt. #11 at p. 2). The Agreement includes a forum-selection clause ("FSC") requiring that the parties bring "[a]ny action arising out of or relating to" the Agreement exclusively in courts sitting in Charlotte, North Carolina (Dkt. #11 at p. 5; Dkt. #11-1 at p. 31). The issue before the Court is whether it should transfer the case to the Western District of North Carolina pursuant to the FSC (*See* Dkt. #11 at p. 5).

Plaintiffs allege that Defendants fraudulently induced them to enter into the Agreement based on misrepresentations regarding fleet account access, franchise territory rights, and required fees (Dkt. #14 at p. 2). Plaintiffs further claim they received inadequate support after opening the franchise, and that Defendants' officer publicly berated Plaintiffs' sole member at a corporate event in Texas in retaliation for her complaints (Dkt. #14 at p. 4). For those reasons, Plaintiffs filed suit in Collin County District Court, asserting claims for breach of contract, fraud, negligent misrepresentation, violation of the Texas Deceptive Trade Practices Act, declaratory judgment, and assault (Dkt. #11 at p. 2). Defendants removed the case based on diversity jurisdiction and now seek transfer to the Western District of North Carolina under the FSC (Dkt. #11 at p. 3).

On October 31, 2024, Defendants filed their Motion, contending that the Western District of North Carolina—not this district—is the proper venue for this case (Dkt. #11). On November 14, 2024, Plaintiffs filed their Response, arguing that Defendants' fraudulent inducement renders the FSC unenforceable (Dkt. #14 at pp. 6–7). On November 21, 2024, Defendants filed their Reply (Dkt. #15). The Motion is now ripe for adjudication.

## LEGAL STANDARD

Section 1404(a) permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against

2

unnecessary inconvenience and expense . . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* The Plaintiffs' choice of venue is not a factor in this analysis, but rather contributes to the

3

Defendants' burden to show good cause for the transfer. *Id.* at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the Plaintiffs' choice should be respected." *Id.* at 315. While the factors are informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

## ANALYSIS

Defendants' Motion presents two issues: (1) whether the FSC is mandatory, enforceable, and applicable to the parties' dispute; and (2) whether Court should apply the standard § 1404(a) transfer analysis or the modified *Atlantic Marine* transfer analysis. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016) (citing *Atl. Marine Constr. Co. v. U.S. District Court. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013)) (explaining that "[t]he calculus [in a § 1404(a) transfer analysis] changes . . . when the parties' contract contains a valid forum-selection clause"). If the FSC is enforceable, the Court must apply the modified transfer analysis; otherwise, the Court applies the traditional § 1404(a) framework. *See id.* The Court addresses each issue in turn below.

### I. Whether the FSC is Valid

The first question before the Court is whether the FSC is valid. If it is, the Court would necessarily transfer this case pursuant to the FSC. *See id.* The answer lies in a three-prong inquiry into: (1) whether the FSC is mandatory or permissive; (2) whether the FSC is valid and enforceable; and (3) whether the parties' dispute falls within the FSC's scope. *See Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491, at *9 (E.D. Tex. July 20, 2023) (citing *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020)). If the Court finds that

4

the FSC is enforceable, it will then consider the traditional "public interest" factors set out in *Atlantic Marine*. *Id*. at 64. If the public interest factors favor transfer, the Court should deny the Motion only if "extraordinary circumstances" nonetheless weigh against transfer. *Atl. Marine*, 571 U.S. at 62 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."). The party opposing transfer "bear[s] the burden of showing that public interest factors overwhelmingly disfavor a transfer." *Id*. at 67. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 65. Applying this framework, the Court finds that the FSC is valid, the public interest factors favor transfer, and no "extraordinary factors" exists that would warrant denying Defendants' Motion. *See id*. The Court must therefore uphold the FSC and transfer the case.

### A. The FSC is mandatory.

The first prong in the FSC validity analysis is whether the clause is mandatory or permissive. *Weber*, 811 F.3d at 770. To determine this, the Court looks to state law as established by the original forum state's choice-of-law rules. *Davis*, 2023 WL 4670491, at *9. Here, the parties agreed that the Agreement "shall be interpreted and construed" under "the laws of the State of North Carolina" (Dkt. #11-1 at p. 31). "In Texas, contractual choice-of-law provisions are typically enforced." *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). There are exceptions "if the law of the chosen state violates a fundamental public policy of Texas or the contract bears no reasonable relation to the chosen state." *Moates v. Facebook, Inc.*, No. 4:21-cv-694-ALM-KPJ, 2022 WL 2707745, at *3 (E.D. Tex. June 13, 2022) (citing *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 n.5 (5th Cir. 1993)). But those exceptions do not apply here. Defendants are headquartered in North Carolina, and the Court does not believe—nor have Plaintiffs persuasively articulated—that

5

enforcing the FSC under North Carolina law would offend some fundamental public policy of Texas (*See* Dkt. #14 at p. 7).

Defendants contend that the clause is mandatory because it requires that any action "arising out of or relating to" the Agreement "shall be commenced, litigated, and concluded only" in a state or federal court in Charlotte, North Carolina" (Dkt. #11 at p. 6). Citing to North Carolina law, Defendants argue that clauses using the word "only" are indisputably mandatory and exclusive (Dkt. #11 at p. 6) (collecting cases exemplifying mandatory language). Plaintiffs do not dispute the FSC's language or assert that it is permissive; rather, Plaintiffs' challenge its enforceability generally (*See* Dkt. #14 at pp. 5–6).

The Court agrees with Defendants. The FSC's language—in particular, the mandate that claims ***shall*** be commenced in North Carolina—is quintessentially mandatory and manifests the parties' intent to designate an exclusive forum. *See, e.g.*, *Bryant v. AP Indus.*, 229 N.C. App. 196, at \*3 (2013) ("'[M]andatory forum selection clauses recognized by our appellate courts have contained words such as "exclusive" or "sole" or "only" which indicate that the contracting parties intended to make jurisdiction exclusive.'"); (quoting Mark Grp. Int'l, Inc. v. Still, 151 N. C. App. 565, 568 (2002)); *Giammattei v. Bertram Yacht, Inc.*, No. 3:09–CV–399–RLV, 2010 WL 2593612, at \*6 (W.D.N.C. June 23, 2010) (concluding a forum-selection clause that stated "venue for any dispute shall lie in Miami-Dade County, Florida" was mandatory); *S. Farm Supply, Inc. v. Arctic Cat Sales Inc.*, No. 5:09–CV–90–RLV–DSC, 2011 WL 2791247, at \*2 (W.D.N.C. July 14, 2011) (concluding a forum-selection clause that stated "[a]ny claim . . . between the parties as to the terms of the Agreement . . . shall be resolved by the State or Federal Courts of the State of Minnesota" was mandatory). That reasoning applies with equal force here. The FSC is mandatory.

6

### B. The FSC is enforceable.

The second prong is whether the FSC is enforceable under federal law, recognizing a "strong presumption in favor of the enforcement of mandatory-forum selection clauses." *Weber*, 811 F.3d at 770; *PCL*, 979 F.3d at 1074. Because of this presumption, a party opposing transfer must satisfy a "heavy burden" to show that enforcing the clause would be unreasonable under the circumstances. *Weber*, 811 F.3d at 773–74.

Defendants argue that Plaintiffs have not met their burden to overcome the FSC's presumptive validity by "clear[ly] showing" that the clause was the product of fraud, overreach, or a public policy violation (Dkt. #15 at pp. 2–4). *See Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997). Defendants further emphasize that Plaintiffs allege fraud only as to the contract in general, not the clause itself, which courts have held is insufficient to overcome the presumption (Dkt. #15 at pp. 2–4).

In response, Plaintiffs contend that the FSC is unenforceable because Defendants fraudulently induced Plaintiffs to enter into the Agreement (Dkt. #14 at pp. 6–7). According to Plaintiffs, Defendants withheld material facts and mispresented facts regarding fleet account access, fee structures, and exclusive rights granted to another franchisee (Dkt. #14 at pp. 3–4). Had Plaintiffs known these facts, they allegedly would not have entered into the Agreement (Dkt. #14 at p. 2). As a result, Plaintiffs argue that the FSC is unenforceable because the entire Agreement stemmed from deception (Dkt. #14 at pp. 6–7). Enforcing an illicitly obtained agreement would allegedly contravene Texas's public policy interests because the case involves alleged violations of the Texas Deceptive Trade Practices Act and conduct directed at Texas residents and businesses (Dkt. #14 at pp. 6–7).

The Court agrees with Defendants. As the Fifth Circuit has made clear, fraud directed at the contract as a whole does not invalidate an FSC; the fraud must specifically relate to the inclusion or negotiation of the clause itself. *Weber*, 811 F.3d at 773; *Haynsworth*, 121 F.3d at 963. Here, Plaintiffs have neither pleaded nor shown in their Response that Defendants' purported fraud specifically related to the FSC (*See generally* Dkt. #9; Dkt. #14 at pp. 6–7). To correct for this, Plaintiffs invite the Court to infer the part from the whole (i.e., that fraud necessarily tainted the FSC because it tainted the Agreement in general). The Court must decline to do so, particularly when Plaintiffs have not identified any public policy sufficiently strong to override the federal presumption favoring enforcement. *PCL*, 979 F.3d at 1074. Plaintiffs cite no caselaw suggesting that Texas's interest in adjudicating local disputes, while legitimate, rises to the level of a public policy that would invalidate a contractually chosen forum. Thus, the Court finds that the FSC is enforceable. *Atl. Marine*, 571 U.S. at 65.

C. **The FSC covers all of Plaintiffs' claims.**

The final prong is whether the clause covers the dispute underlying this case. *Weber*, 811 F.3d at 770. Under North Carolina law, a forum-selection clause that covers "any action arising out of relating to" an agreement is "as broad as forum-selection clauses get." *See ALCOF III NUBT, L.P. v. Chirico*, No. 23-CV-031948-590, 2024 WL 3898000, at *4 (N.C. Super. Aug. 21, 2024) ("The phrase 'relating to' is expansive, and disputes 'relating to' a contract include disputes about not only contract 'performance' but also contract 'formation' and other matters touching on the parties' contractual relationship."). In a similar vein, Defendants argue that all of Plaintiffs' claims—whether sounding in contract or tort—fall within the scope of the clause because it covers any action "arising out of or relating to" the Agreement (Dkt. #11 at pp. 11–12; Dkt. #11-1 at p. 31). Defendants note that the core of Plaintiffs' claims arises from the parties' franchise relationship

8

and obligations under the Agreement (Dkt. #11 at p. 2). Plaintiffs respond that certain claims—particularly those of fraudulent inducement and assault—do not *arise under* the Agreement because they constitute a direct *attack on* the Agreement itself, placing those claims outside the FSC's reach (Dkt. #14 at p. 11).

The Court finds that Plaintiffs' claims fall within the FSC's scope. The phrase "relating to" is broad, and courts construe such clauses to include related tort claims where the underlying facts are intertwined with the contract. *See, e.g.*, *Waycaster Tire Serv., Inc. v. United Cmty. Bank*, No. 1:22-cv-269-MOC, 2023 WL 2672825, at *2 (W.D.N.C. Mar. 28, 2023) ("Forum selection clauses apply not only to contract claims but also to contract related tort claims."); *Granoff as Tr. of Granoff Acquisition Tr. v. Buoyance, Inc.*, No. CV 20-1909, 2020 WL 7495553, at *5 (E.D. La. Dec. 21, 2020) (applying North Carolina law to conclude that claims for fraud, unfair trade practices, conversion, tortious interference, breach of contract, and breach of fiduciary duty "related to" the contract and were within the scope of the forum-selection clause). Here, Plaintiffs' claims for fraud, misrepresentation, and statutory violations all stem from alleged conduct tied to Defendants' performance under the Agreement. They are therefore sufficiently related to the Agreement to fall within the FSC's scope. The Court therefore concludes that the FSC covers the entire dispute underlying this case.

In sum, the Court finds that the FSC is mandatory, enforceable, and applicable to all of Plaintiffs' claims. The clause must accordingly be given "controlling weight" unless Plaintiffs can show that this is the "unusual" case in which "extraordinary circumstances" defeat transfer. *See Atl. Marine*, 571 U.S. at 64; *Weber*, 811 F.3d at 776. To assess this, the Court considers the "public interest factors" typically employed in deciding a § 1404(a) motion. *Atl. Marine*, 571 U.S. at 64.

These factors "justify a refusal to enforce a forum-selection clause only in truly exceptional circumstances." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 309 (5th Cir. 2016). The party opposing transfer bears the burden of showing that the public interest factors "overwhelmingly disfavor" transfer. *Atl. Marine*, 571 U.S. at 67. As detailed below, Plaintiffs do not meet their burden.

## II. Whether the Public Interest Factors Support Transfer

Under the modified *Atlantic Marine* framework, the Court gives no weight to the Plaintiffs' choice of forum and disregards private-interest factors. *See id.* at 64. Consequently, the Court's analysis distills into whether the public-interest factors "overwhelmingly disfavor" transfer. *See id.* at 67. They do not.

### A. The "administrative difficulties flowing from court congestion" factor favors transfer.

First, the Court considers the administrative difficulties factor, which evaluates docket congestion and the relative time to disposition in the transferor and transferee courts. *See Parmer v. Entrust Corp.*, No. 4:23-CV-667, 2024 WL 1889241, at *8 (E.D. Tex. Apr. 29, 2024). Defendants submit judicial caseload statistics showing that, as of March 2024, the Western District of North Carolina has substantially fewer pending cases and a shorter median time to disposition in civil matters than this district (Dkt. #11 at p. 13). Plaintiffs do not dispute these figures (*See generally* Dkt. #14). The Court agrees that transferring this case would promote judicial efficiency and reduce administrative burden, as the Western District of North Carolina is less congested than this district. This factor therefore favors transfer.

### B. The "local interest" factor favors transfer.

Next, the Court evaluates which forum has a stronger interest in adjudicating the dispute. *See Parmer*, 2024 WL 1889241, at *8. Defendants argue that this district has no material connection

10

Case 3:25-cv-00535-FDW-DCK    Document 35    Filed 06/30/25    Page 10 of 12

to the dispute: the events giving rise to this suit allegedly occurred in the Dallas–Fort Worth metroplex (part of the *Northern* District of Texas), and Defendants are headquartered in North Carolina (Dkt. #11 at pp. 13–14). In contrast, Defendants claim that the Western District of North Carolina has a strong interest in resolving disputes involving companies (like Defendants) that are based in its jurisdiction (Dkt. #11 at pp. 13–14). Plaintiffs argue that Texas has a public interest in regulating conduct affecting its residents and businesses (Dkt. #14 at pp. 6–7). The Court agrees with Defendants. The events underlying this suit give this district an incidental interest in the resolution of this case, which pales in comparison to the Western District of North Carolina's legitimate stake in regulating the conduct of companies domiciled there. This factor therefore favors transfer.

### C. The "familiarity of the forum with the governing law" factor is neutral.

Next, the Court considers which forum is more familiar with the substantive law governing the dispute. *See Parmer*, 2024 WL 1889241, at *8. As discussed above, the Agreement contains a North Carolina choice-of-law provision, which Texas courts generally enforce (Dkt. #11-1 at p. 31). *See supra* at 5. While a North Carolina court may be more familiar with its own laws, federal courts are routinely called upon to apply the law of other states. *See, e.g.*, *Provitas, LLC v. Quality Ingredients Corp.*, 4:21-CV-00196, 2021 WL 5907790, at *18 (E.D. Tex. Dec. 14, 2021); *Atl. Marine*, 571 U.S. at 67 (observing that "federal judges routinely apply the law of the [s]tate other than the [s]tate in which they sit"). Because neither party identified complex or unsettled legal issues that would make applying North Carolina law unusually burdensome in this Court, this factor is neutral.

### D. The "avoidance of unnecessary conflicts of law issues" factor is neutral.

Finally, the Court considers the avoidance of conflicts of laws factors, which asks whether transferring the case would minimize the risk of inconsistent application of different states' laws.

*See Parmer*, 2024 WL 1889241, at *8. The parties do not dispute that this factor is neutral (Dkt. #11 at pp. 14–15; *see generally* Dkt. #14). The Court agrees.

Weighing the public-interest factors together, then, the Court finds that two factors favor transfer and the remaining two are neutral. None weigh against transfer. Because the FSC is enforceable and the public-interest factors favor transfer, Defendants have met their burden under the *Atlantic Marine* framework to show that the Western District of North Carolina is a "clearly more convenient" venue to decide this case. *See Volkswagen II*, 545 F.3d at 315. The Court will therefore **GRANT** the Motion.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #11) is hereby **GRANTED**. It is hereby **ORDERED** that this case be transferred to the Western District of North Carolina.

It is further **ORDERED** that Defendant Helmuth Mayer is hereby **DISMISSED** without prejudice as an improper party.[1]

**IT IS SO ORDERED.**
**SIGNED this 30th day of June, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[1] The Court concludes that Defendant Helmuth Mayer was improperly joined, as Plaintiffs have not alleged any viable cause of action against him and his presence is unnecessary to afford complete relief on Plaintiffs' claims (*See* Dkt. #1 at pp. 3-5). Defendant Mayer did not contest this conclusion. Accordingly, the case against Defendant Mayer is dismissed without prejudice.